**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ISELA V. MARQUEZ and FERNANDO MARQUEZ, as plenary co-guardians of CHLOE MARQUEZ, a disabled person, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | Case No.:  21-cv-3359 |
| v. | ) ) | |
| | ) | Plaintiffs Demand Trial by Jury |
| OSF HEALTHCARE SYSTEM, an Illinois Not-For-Profit Corporation, doing business as OSF LITTLE COMPANY OF MARY MEDICAL CENTER, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Isela and Fernando Marquez, not individually, but as plenary co-guardians for their daughter Chloe Marquez ("Plaintiff," and sometimes "Chloe"), by their attorneys, Jennifer M. Sender and Andrés J. Gallegos of Robbins Salomon & Patt, Ltd., for their Complaint against Defendant OSF Healthcare System, an Illinois Not-For-Profit Corporation, doing business as OSF Little Company of Mary Medical ("Defendant" or sometimes "OSF"), state as follows:

**INTRODUCTION**

1.      In June 2019, Chloe experienced two mental health crises requiring inpatient treatment. After a determination was made that Chloe needed inpatient mental health care in one instance because of suicidal ideation she was denied admission to OSF's behavioral unit, a hospital that represents on its website its mission is to serve persons with the greatest care and love in a community that celebrates the "Gift of Life." As the Marquez family learned, OSF's celebration

4019895 (14677.1)

of the "gift of life" has limits. The basis for the denial, ironically, was the crux of Chloe's mental health crisis – her cerebral palsy, wheelchair use and use of a gastronomy tube.

## JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the Plaintiffs' claims alleged herein arise under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, *et seq.*; and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116. Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil Procedure.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiffs' claims occurred here in this district.

## THE PARTIES

4.      Plaintiff Chloe Marquez is 22-years old and has been living with the effects of cerebral palsy since birth, has dysphagia and utilizes a gastronomy tube. Chloe is a person with a disability within the meaning of all applicable statutes. Chloe resides in Orland Park, Illinois, with her parents. Isela and Fernando Marquez, her parents, are her legal guardians.

5.      OSF Little Company Mary Medical Center is part of an integrated health system known as OSF HealthCare. OSF HealthCare employs over 23,000 mission partners in more than 350 locations, including 14 hospitals, 30 urgent care locations, and two colleges of nursing throughout Illinois and Michigan. The OSF HealthCare physician network employs over 2,400 primary care, specialist, and advanced practice providers. OSF Little Company Mary Medical Center, located in Evergreen Park, Illinois, is OSF HealthCare's second largest location with 274 licensed beds. For the year ending December 31, 2019, OSF's gross receipts were over $3.1 billion.

2

6. OSF's behavioral and mental health services offer support to adults, teens, and children seeking diagnosis, short-term treatment or long-term management of mental and emotional health issues. OSF's behavioral health inpatient services include psychiatric treatment for: acute depression; bipolar disorder; anxiety disorders; obsessive-compulsive disorders; psychosis; and schizophrenia. In its provision of behavioral health services, OSF utilizes a multidisciplinary team of experts including psychiatrists. psychiatric nurses, clinical social workers, and occupational therapists.

7. OSF receives federal financial assistance in the form of Medicare and Medicaid reimbursement. Accordingly, OSF is a recipient of federal financial assistance within the meaning of the Rehabilitation Act and is a covered entity under Section 1557.

## EXPERIENCES OF PLAINTIFF CHLOE MARQUEZ
## & DEFENDANT'S CONDUCT

8. Chloe has a history of depression, which has and will likely from time to time require intervention or treatment on an inpatient or outpatient basis. She participates in outpatient psychiatric care through Northwestern Medicine.

9. As a result of Chloe's cerebral palsy, she requires the use of a power wheelchair for mobility, although she can ambulate short distances, up to 100 feet with a walker. She can operate her wheelchair on her own. Chloe can stand with assistance. She requires assistance transferring from her wheelchair onto a bed, but she can independently transfer from and to her wheelchair and toilet. As a result of her dysphagia, Chloe follows a puree diet. Once her food is set up for her, she can feed herself for approximately 10 minutes before becoming fatigued, at which point she requires assistance. Since August 2018, she requires the use of a Gastrostomy Tube ("G-Tube") for supplemental nutrition. She receives water and medication through the G-Tube. Chloe can

brush her teeth, bathe, and groom herself with assistance. She can also dress herself with standby assistance. As a further result of her dysphasia, she utilizes an iPad to communicate using text-to-speech and, at times, a symbol-supported communications app. Chloe can type on the iPad keyboard using her thumbs.

10.     On June 22, 2019, Mrs. Marquez noticed a linear abrasion on Chloe's neck. When asked about the abrasion, Chloe admitted that she attempted suicide. Mrs. Marquez immediately called Chloe's psychiatrist requesting guidance on what to do and where to take Chloe for assistance. Chloe's psychiatrist never responded. Mr. Marquez watched over Chloe all night.

11.     On June 23, 2019, Chloe was demonstrating behavior concerning to her parents. Mrs. Marquez was able to speak with Chloe's psychiatrist who instructed her to take Chloe to Northwestern Memorial Hospital's ("NMH") emergency department. While in the emergency department, Chloe was evaluated by NMH's psychiatry acute crisis intervention team who learned that Chloe was having suicidal ideations since June 10, 2019.

12.     Given Chloe's worsening depression, suicide attempt and other behaviors, NMH's crisis intervention team recommended psychiatric inpatient admission, and prepared a petition for her involuntary admission. A crisis intervention team social worker commenced a search for a mental and behavioral health hospital to admit Chloe.

13.     When a crisis intervention team social worker called OSF on June 25, 2019, a OSF employee informed the NMH social worker that OSF was unable to accept Chloe because her use of a wheelchair and use of a G-Tube.

14.     On May 26, 2021, Mrs. Marquez called OSF to inquire whether Chloe will be permitted to be admitted there as an inpatient if the need arose. Mrs. Marquez was informed that OSF closed down its behavioral health unit due to COVID–19 and would not be reopening.

15.     In denying access to its services and facilities to persons with physical disabilities and who utilize mobility devices, like Chloe, OSF is discriminatorily cherry-picking its patients.

## COUNT I

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 704

16.     Plaintiff incorporates here by reference paragraphs 1 through 15, as if fully set forth herein.

17.     At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs. As a result, Defendant are subject to the antidiscrimination provisions of Section 504, as herein described.

18.     At all times relevant, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a). The Section 504 implementing regulation provides that "[n]o qualified handicapped person shall, on the basis of handicap be excluded from participation in, be denied the benefits of or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance." 45 C.F.R. § 84.4(a). The regulation further provides:

A.      A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ... 45 C.F.R. § 84.4(b)(1)(ii).

B.      A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap ... 45 C.F.R. § 84.4(b)(4).

C.      In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: … (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.  45 C.F.R. § 84.52(a)(2).

5

D. A definition for "handicapped person" as any person who: "(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 45 C.F.R. § 84.3(j)(l)(i)-(iii).

E. A definition for "qualified handicapped person," with respect to the provision of health, welfare and social services, as a person "who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k)(4).

F. A recipient shall operate its program or activity so that when each part is viewed in its entirety, it is readily accessible to handicapped persons… 45 C.F.R. § 84.22(a).

19. Chloe is a qualified person with disabilities who met the essential eligibility requirements for receipt of Defendant's behavioral health services as she suffered from depression. Further, NMH's psychiatry crisis intervention team determined psychiatric inpatient admission was required. The services she sought were directly within Defendant's scope of services offered. But for her physical disabilities, Defendant would have accepted Chloe as a patient.

20. Through the acts and omissions alleged herein, Defendant has, solely on the basis of Plaintiff's disabilities, denied Plaintiff access to its services and facilities, excluded Plaintiff from participating in its services, denied Plaintiff the benefit of its services and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794. *et seq*., and the regulations promulgated thereunder, all of which have resulted in injury to Plaintiff. *See, Bowen v. American Hospital Association,* 476 U.S. 610 (1986) (Section 504 does entitle handicapped individuals to 'meaningful access' to medical services).

21. Defendant's discriminatory refusal to accept Chloe as a patient, on the basis of her physical disabilities, was intentional and done so with deliberate indifference as to Chloe's federally protected civil and legal rights.

22. Defendant's acts and omissions alleged herein violated Section 504 and its implementing regulations and discriminated against Plaintiff by:

6

A.      Denying her meaningful access to its mental health services.

B.      Denying her the opportunity for the full and equal enjoyment of its services and facilities owned, operated, and/or contracted for use by Defendant.

C.      Denying her the opportunity to participate in or benefit from its services and facilities, privileges, advantages, or accommodations.

D.      Acting intentionally and with deliberate indifference by denying Plaintiff access to its services and facilities.

E.      Defendant has otherwise discriminated against the Plaintiff.

23.      Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

24.      As a proximate result of Defendant's violations of Section 504, Defendant has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation and mental pain and suffering.

25.      Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

A.      A declaration that Defendant in denying access to its facilities and services discriminated against the Plaintiff and that Defendant failed to have an admission policy as required by law;

B.      An award of compensatory monetary damages;

C.      An award of attorneys' fees and costs; and

D.      Such other relief as the Court deems just.

## COUNT II

### VIOLATION OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT, 42 U.S.C. § 18116

26.     Plaintiff incorporates here by reference paragraphs 1 through 15, as if fully set forth herein.

27.     Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.,* Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

28.     Defendant is a participating provider in the Medicare and Medicaid programs and as a result, thereof, it is a covered entity under Section 1557.

29.     The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1).

30.     Those regulations, in pertinent part, require covered entities to comply with the accessibility standards for buildings and facilities set forth in the 1991 Standards or the 2010 Standards. 45 C.F.R. § 92.203(a)&(b). The "1991 Standards" means the 1991 ADA Standards for Accessible Design, published at appendix A to 28 CFR part 36 on July 26, 1991, and republished as appendix D to 28 CFR part 36 on September 15, 2010. *See* 45 C.F.R. § 92.4. The "2010

8

Standards" means the 2010 ADA Standards for Accessible Design, as defined at 28 CFR 35.104.

*See Id.*

31.     Those regulations also require covered entities to make reasonable modifications

to its policies, practices, or procedures when such modifications are necessary to avoid

discrimination on the basis of disability, unless the covered entity can demonstrate that making the

modifications would fundamentally alter the nature of the health program or activity. 45 C.F.R. §

92.105.

32.     Defendant's discriminatory refusal to accept Chloe as a patient on the basis of her

physical disabilities was intentional and done so with deliberate indifference as to Chloe's

federally protected civil and legal rights.

33.     Defendant's acts and omissions alleged herein violated Section 1557 and its

implementing regulations and discriminated against Plaintiff by:

> A.     Denying her meaningful access to its mental health services.
>
> B.     Denying her the opportunity for the full and equal enjoyment of its health program or activity.
>
> C.     Denying her the opportunity to participate in or benefit from its services and facilities, privileges, advantages, or accommodations.
>
> D.     Acting intentionally and with deliberate indifference by denying Plaintiff access to its services and facilities.
>
> E.     Failing to make reasonable modifications in its policies, practices, or procedures, which are necessary to afford Defendant's services and facilities to her where such modifications would not fundamentally alter the nature of its services.
>
> F.     Failing to remove architectural barriers where such removal is readily achievable to permit her to access its facilities the purposes of utilizing its services.
>
> G.     Defendant has otherwise discriminated against the Plaintiff.

34.     Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

35.     Defendant's conduct constitutes ongoing and continued violations of Section 1557. Unless restrained from doing so, Defendant will continue to violate Section 1557. This conduct, unless enjoined, will inflict injuries on Plaintiff for which she will have no adequate remedy at law.

36.     Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

37.     As a direct and proximate result of the foregoing, Plaintiff suffered the loss of a civil right and she suffered great mental anguish; and she will continue so to suffer for a long time in the future; and Plaintiff was otherwise injured and damaged.

38.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.     A declaration that Defendant in denying access to its facilities and services discriminated against the Plaintiff and that Defendant failed to have an admission policy as required by law;

10

B.        An award of compensatory monetary damages;

C.        An award of attorneys' fees and costs; and

D.        Such other relief as the Court deems just.


Dated: June 23, 2021                Isela and Fernando Marquez, plenary co-guardians of
Plaintiff Chloe Marquez

 /s/ Jennifer M. Sender

_____
One of Her Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiff Chloe Marquez
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com